UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HARWIN BRAXTON CENTRE INC, | § § § § § § § § § § § § § | CIVIL ACTION NO. 4:19-cv-03175 |
| Plaintiff, | | |
| vs. | | JUDGE CHARLES ESKRIDGE |
| AMGUARD INSURANCE COMPANY, *et al*, Defendants. | | |

OPINION AND ORDER
DENYING SUMMARY JUDGMENT

The motion by Defendant AmGUARD Insurance Company for summary judgment is denied. Dkt 48.

1. Background

Plaintiff Harwin Braxton Centre, Inc owns two warehouses in northwest Houston, known for purposes here as Building 1 and Building 2. Both were damaged during Hurricane Harvey.

Harwin Braxton holds an all-risk insurance policy with AmGUARD. See Dkt 48-1 at 7–95. The policy provides that AmGUARD must reimburse Harwin Braxton for "direct physical loss or damage to Covered Property at the premises . . . caused by or resulting from any Covered Cause of Loss." Dkt 48-1 at 12. *Covered Cause of Loss* in turn means "[r]isks of direct physical loss unless the loss is" either excluded or limited by certain specified provisions. Id at 13.

The limitation at issue here pertains to rain damage:

> a. We will not pay for loss of or damage to:
>
> . . .
>
> (5) The interior of any building or structure caused by or resulting from rain, snow, sleet,

>> ice, sand or dust, whether driven by wind or not, unless:
>
> (a) The building or structure first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain, snow, sleet, ice, sand or dust enters.

Ibid.

Harwin Braxton says that Hurricane Harvey damaged the roofs of the two warehouses, which in turn allowed rain to enter both and damage their ceiling, walls, insulation, and flooring. Dkt 1-1 at ¶ 24. It submitted a claim to AmGUARD under the insurance policy.

AmGUARD assigned the claim to an adjuster, Defendant VeriClaim, Inc. VeriClaim in turn directed field adjusters to conduct property inspections. The inspectors noted that the Building 1 roof had collapsed, apparently because of the storm. They also noted that a substantial amount of water had entered Building 2 from the roof. Dkt 48-1 at 5; see also Dkt 48 at 7. But they reported that the roof of Building 2 didn't appear to have been damaged by the storm. Dkt 48-1 at 4–5; see also Dkt 48 at 7–8. An additional engineering firm hired by VeriClaim also reported that the storm didn't damage the roof of Building 2, finding instead that water leaked into that building because the roof was already in poor condition. Dkt 48-1 at 5–6; see also Dkt 48 at 8.

AmGUARD allowed the claim as to Building 1, agreeing to pay Harwin Braxton $642,094.29. But it denied coverage as to Building 2, explaining that the limitation described above applied because its investigation "found no indication that wind, or any other weather event, caused physical damage to the roofing membrane." Dkt 48-1 at 6.

Harwin Braxton filed this lawsuit in July 2019, asserting causes of action for breach of contract, breach of the common law duty of good faith and fair dealing owed to insureds, violations of several provisions of the Texas Insurance Code, and state-law fraud and conspiracy to commit fraud. Dkt 1-1. It originally named a number of other defendants. But AmGUARD assumed responsibility for some and the others have been

dismissed. See Dkts 64, 68. The only remaining dispute is now between Harwin Braxton and AmGUARD.

AmGUARD moved for summary judgment after the close of discovery. Dkt 48.

2. Legal standard

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics, Inc v Oregon Cardio-Devices, Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby, Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles, LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2010), quoting *Anderson*, 477 US at 248. Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008), citing *Ballard v Burton*, 444 F3d 391, 396 (5th Cir 2006).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015) (quotation omitted); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986) (citations omitted). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536 (quotation omitted). To meet this burden of proof, the evidence must be both "competent and admissible at

trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012) (citation omitted).

3. Analysis

AmGUARD moves for summary judgment on the breach-of-contract claim, essentially arguing that there's no evidence to establish that the rain-damage limitation doesn't apply. It also moves as to the three extracontractual claims, largely based on assumption that the breach-of-contract claim will first be found deficient. To the contrary, issues of material fact preclude summary judgment with respect to all claims.

a. Breach of contract

The parties do have some limited areas of agreement. First, they agree that Texas contract law applies. See *ARM Properties Management Group v RSUI Indemnity Co*, 400 F Appx 938, 940 (5th Cir 2010, *per curiam*). Second, they agree that in order to prove entitlement to coverage under the policy, the burden is on Harwin Braxton to prove that Hurricane Harvey first damaged the roof of Building 2 and created an opening through which the rain then entered. See *JAW The Pointe, LLC v Lexington Insurance Co*, 460 SW3d 597, 603 (Tex 2015). And third, they agree that if Harwin Braxton establishes coverage, the burden is also on it to show which damages are covered and which aren't—that is, Harwin Braxton must segregate its damages. See *Papa Yolk's Grill, Inc v AmGUARD Insurance Co*, 2020 WL 1875191, *5 (SD Tex).

AmGUARD argues that there's no evidence that the storm created an opening in the Building 2 roof, but rather, that all of the evidence suggests that the openings were created over time by wear and tear and inadequate maintenance. See generally Dkt 48-1 at 2–6 (Prislupsky declaration); Dkt 48-2 at 2–7 (Williams declaration); Dkt 51 at 23–24, 27, 30, 146–47 (depositions). And even if some evidence indicates that the storm created the openings, there's no evidence from Harwin Braxton separating covered and uncovered damages.

Harwin Braxton points to the testimony of its expert, Daniel Guiter, who is a professional consultant with expertise in building investigations, reconstruction estimates, and insurance loss appraisals. See Dkt 32. He opines that storm winds (possibly in part from a localized, spawned tornado) threw debris onto the

roof, scuffing it and creating openings. See Dkt 51 at 23, 25, 28, 30–32 (Guiter deposition). It's also his opinion that storm winds were the sole cause of damage to the roof. Ibid. Accepting that as true, Harwin Braxton says, means that coverage exists for *all* damages—thus foregoing any need to segregate covered from uncovered damages. See Dkt 50 at 9–11.

AmGUARD hasn't challenged Guiter's expertise or moved to exclude his opinions. But it does argue that his conclusions should be disregarded because they lack a sufficient basis in fact. It cites *Papa Yolk's Grill, Inc v AmGUARD Insurance Co*, 2020 WL 1875191 (SD Tex), where Judge Sim Lake considered a similar claim involving the same defendant and an identical insurance policy. Id at *1. In defending against a motion for summary judgment, the plaintiff pointed to an insurance agent's declaration and a field adjuster's report and deposition. Id at *4–5. Judge Lake granted summary judgment, reasoning that neither source affirmatively showed that wind damaged the property at issue, but only "suggested that there may be some doubt" as to the cause. Id at *5. And further, the plaintiff "pointed to no evidence that would permit a jury or the court to allocate damages between the negligent maintenance and other causes." Ibid.

To the contrary here, Harwin Braxton offers evidence from its designated expert, who inspected the property and available documentary evidence. And that expert affirmatively opines that storm winds—and nothing else—damaged the roof of Building 2 and allowed the rain to enter. Now, that opinion and testimony may not withstand scrutiny at trial, especially as against AmGUARD's own evidence and explanation of what caused the roof damage. But it isn't the province of a district court to "make credibility determinations or weigh the evidence" in response to a motion for summary judgment. *Reeves v Sanderson Plumbing Products, Inc*, 530 US 133, 150 (2000) (citations omitted). Instead, the only pertinent question is whether a genuine issue of material fact exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith*, 956 F3d at 316, quoting *Anderson*, 477 US at 248.

At least some such evidence is present here. Summary judgment must be denied as to the breach-of-contract claim.

b. Extracontractual claims

AmGUARD seeks summary judgment as to extracontractual claims on several bases. Its primary contention is that such claims necessarily fail when the underlying breach-of-contract claim fails. See *USAA Texas Lloyds Co v Menchaca*, 545 SW3d 479, 500 (Tex 2018). But the breach-of-contract claim proceeds, nullifying the argument.

AmGUARD also briefly argues that the claims for fraud and conspiracy in that respect fail "for lack of evidence, and because Plaintiff has not suffered any injury independent of policy benefits." Dkt 48 at 22. But its brief makes clear that this is merely reiteration of argument that these claims should fail because the breach-of-contract claim fails. As such, the argument fails.

It also sponsors a cursory argument as to the merits of the claims under the DTPA and Texas Insurance Code. Id at 21–22. Harwin Braxton alleges that AmGUARD's wrongful denial of valid insurance claims makes it liable on these statutory causes of action. AmGUARD argues that these claims fail because an insurer can only be liable under these statutes where it represents that a claim is *covered* when in fact it *is not*—instead of where (as here) it represents that a claim is *not covered* when in fact *it is*. See id at 21, quoting *Menchaca*, 479 SW3d at 493, 497. It's certainly true that an insurer may be liable on the basis AmGUARD describes. But that's not a limiting basis for liability. Indeed, *Menchaca* explicitly holds that a plaintiff may assert a valid claim under the DTPA and Texas Insurance Code where the insurer "'*wrongfully* denied' a '*valid* claim.'" Id at 496 (emphasis in original), quoting *Vail v Texas Farm Bureau Mutual Insurance Co*, 754 SW2d 129, 136–37 (Tex 1988). The argument lacks merit.

4. Conclusion

The motion by Defendant AmGUARD Insurance Company for summary judgment is DENIED. Dkt 48.

SO ORDERED.

Signed on May 14, 2021, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge